**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRICE ALILA-KATITA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BANK NATIONAL ASSOCIATION, <br><br> Defendant. | Case No. 16-cv-03950-JSW <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 19 |

Now before the Court for consideration is the motion to dismiss filed by Defendant, U.S. Bank National Association ("Defendant"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS Defendant's motion.

**BACKGROUND**

Plaintiffs in this case are former employees of Defendant, who occupied the position of small business bankers and/or business banking officers (collectively "BBOs"). Plaintiffs assert individual claims for violations of various provisions of the California Labor Code and California's Unfair Competition Law ("UCL"). The Court will address the nature of those claims in more detail below. It is undisputed that each Plaintiff was a member of a now decertified class of BBOs who previously filed suit against Defendants for violations of the Labor Code and the UCL in a lawsuit captioned *Duran v. U.S. Bank National Association*, Alameda County Superior Court Case No. 2001-035537 ("*Duran*").[1]

---

[1] On July 28, 2016, the Court granted Defendant's motion to relate this case to *Trahan, et al. v. U.S. Bank National Association*, No. 09-cv-3111-JSW ("*Trahan*"). The *Trahan* case also was a continuation of the *Duran* litigation, in that it involved claims asserted by business banking officers employed by Defendant from September 27, 2005 through June 30, 2009.

Plaintiffs' overarching theory is that Defendant misclassified them as non-exempt employees. Plaintiffs allege that they "were regularly scheduled as a matter of uniform company policy to work and in fact worked as salaried bank employees in excess of eight hours per workday and/or in excess of forty hours per work week without receiving straight time or overtime compensation for such overtime hours worked[.]" (Dkt. No. 20, Defendant's Request for Judicial Notice ("Def. RJN"), Ex. 2 (First Amended Complaint ("FAC"), ¶ 10.) Plaintiffs also allege that they were eligible for incentive compensation. (*Id.* ¶ 11.) According to Plaintiffs, Defendant did not provide them with the required number of rest and meal period breaks, did not document such breaks, and "willfully, intentionally and knowingly did not provide Plaintiffs with accurate itemized wage statements showing all of the information required pursuant to Labor Code [sections] 226 and 1174[.]" (*Id.* ¶¶ 12, 23.) Plaintiffs also allege that they were not timely and properly paid all of their wages at time of termination. (*Id.* ¶ 13.) With the exception of the allegations regarding incentive compensation, these allegations are the same basic allegations that gave rise to the dispute in *Duran*.

### 1. The *Duran* Litigation.

The original complaint in *Duran* was filed on December 26, 2001, by Amina Rafiqzada on behalf of herself and a putative class of persons employed by Defendant as small business bankers. (Def. RJN, Ex. 3 ("*Duran* Compl."), ¶¶ 1-2).) Ms. Rafiqzada alleged that she and the putative class "were improperly and illegally mis-classified by Defendant[] as 'exempt' employees," and asserted claims for violations of Labor Code section 1194, *et seq.*, for failure to pay overtime, violations of waiting time penalties pursuant to Labor Code section 203, civil penalties pursuant to Labor Code section 1174.5, a UCL claim based on the alleged violations of the Labor Code, and a claim for conversion. (*Duran* Compl., ¶ 9 and Prayer for Relief at p. 14-16.)

On February 26, 2003, the plaintiff in *Duran* filed a First Amended Complaint ("*Duran* FAC"), which substituted in new plaintiffs but continued to assert the claims asserted in the original complaint. (*See generally* Def. RJN, Ex. 4 (*Duran* FAC).) On March 14, 2005, the

plaintiffs in *Duran* filed the Second Amended Complaint ("*Duran* SAC"), which again substituted in new plaintiffs, added claims for persons employed as BBOs, added a claim for failure to provide meal and rest period breaks, and added a claim under the Labor Code's Private Attorneys General Act ("Labor Code PAGA"). (Def. RJN, Ex. 5 (*Duran* SAC ¶¶ 21-22).) In their UCL claim, the *Duran* plaintiffs also alleged that Defendant's conduct violated the Labor Code sections identified in their first cause of action as well as Labor Code sections 204, 216, 1198 and 1199. (*Id.* ¶ 24.)

On April 29, 2005, the state court granted the *Duran* plaintiffs' motion for class certification and certified a class consisting of "all current and former California-based employees of Defendant … with the title 'small business banker ('SBB') and/or 'business banking officer ('BBO') who were employed at any time between December 26, 1997 and a date 10 days prior to the date of actual mailing of the notice to the class." (Def. RJN, Ex. 6 (Order Granting Motion for Class Certification; Def. RJN Ex. 7 (Order re Notice at 2:6-10).) The record shows that this Order did not encompass the claim based on alleged meal and rest period violations. (Def. RJN, Ex. 14.) The putative class members were then provided notice and the opportunity to opt out of the class.

On November 1, 2006, the *Duran* plaintiffs dismissed the claims for direct violations of the Labor Code and for conversion and sought relief solely under the UCL for the alleged Labor Code violations. (*See, e.g.,* Def. RJN Ex. 10 (Plaintiffs' Motion for Leave to Amend ("Mot. for Leave") at 2:10-11).) According to the record, the *Duran* plaintiffs made the "tactical decision" to waive their legal claims. (Plaintiffs' Request for Judicial Notice ("Pls. RJN"), Ex. 1 (*Duran* Plaintiffs Mem. of Points and Auth. Regarding Waiver of Legal Claims at 2:22).) The *Duran* plaintiffs viewed the decision to waive the legal claims to be "in the best interests of the class because it removes the right of a jury trial and allows the case to be tried as a bench trial." (*Id.* at 2:22-24.) The record also shows that the dismissal of the legal claims was over Defendant's objection and without prejudice. However, the *Duran* court required that the class be given notice of the dismissal and a further opportunity to opt-out. (Pls. RJN, Ex. 2 (Nov. 1, 2006, Transcript of Proceedings at 2:7-21, 4:19-5:11, 6:19-8:16; Mot. for Leave at 2:22-3:7), Ex. 12 (Order re Supplemental Notice).)

3

Thereafter, the *Duran* Plaintiffs moved for leave to file a Third Amended Complaint ("*Duran* TAC") to ensure that the claim for meal and rest breaks was included as a predicate violation of the UCL claim and to conform the complaint to reflect the dismissal of the legal claims. (Mot. for Leave at 2:22-3:7.) The court granted the *Duran* plaintiffs' motion, and they filed the *Duran* TAC on November 30, 2006. (Def. RJN, Exs. 9, 11.) The *Duran* class members were then provided notice of the changes and were specifically advised that "[i]f you do not want to participate in this lawsuit, or wish to pursue your legal claims instead of having them dismissed, you can exclude yourself by 'opting out.'" (Order re Supplemental Notice, Ex. A (Notice at 3).) The deadline to opt-out was January 15, 2007. (Def. RJN. Ex. 13 (Supplemental Declaration re Notice Procedures ("Supp. Notice Decl."), Ex. A, Notice of Change of Claims at 2).) It is undisputed that none of the Plaintiffs in this case chose to opt-out after receiving this notice. (Supp. Notice Decl., ¶¶ 10-11, Exs. C-D.) On May 16, 2007, the court denied the *Duran* plaintiffs' motion to certify a class to pursue the alleged rest and meal break violations under the UCL. (*Id.*, Ex. 14.)

On May 20, 2009, following a bifurcated bench trial, the court entered judgment in favor of the *Duran* plaintiffs on the UCL overtime claim. (*Id.*, Ex. 15.) Defendant appealed, but the *Duran* plaintiffs did not file a cross-appeal of the order denying the motion to certify the meal and rest break class. The California Supreme Court affirmed the Court of Appeal's decision to decertify the case and vacate the judgment, and it also stated that the trial court could entertain a new motion for class certification on remand. *Duran v. U.S. Bank Nat. Ass'n*, 59 Cal. 4th 1, 50 (2014). On May 19, 2016, the trial court denied the *Duran* plaintiffs renewed motion for class certification of the overtime claim. (Def. RJN, Ex. 16.) The *Duran* plaintiffs have appealed that decision. (Pls. RJN, Ex. 3.)

**2.     The Instant Litigation.**

Plaintiffs filed this action on May 24, 2016, five days after the court in *Duran* denied the renewed motion for class certification. (Def. RJN, Ex. 1 ("Compl.").) In that complaint, Plaintiffs only sought relief under the UCL. (*See* Compl., Prayer for Relief at 7.) On July 12, 2016, Plaintiffs filed their FAC, in which they assert claims against Defendant for: (1) violations of

4

California Labor Code sections 510 and 1194, for failure to pay overtime; (2) violations of California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.* ("UCL") based on the failure to pay overtime; (3) violations of the UCL, based on the failure to provide rest and meal breaks; (4) violations of Labor Code section 203 for failure to pay earned and unpaid wages; (5) violations of Labor Code sections 226, 1174 and 1174.5 for failure to provide accurate and itemized wage statements; and (6) a UCL Claim based on alleged violations of Labor Code sections 204 and for failure to pay incentive compensation on a semi-monthly basis and the failure to pay incentive wages during the pay period in which they are earned. Plaintiffs also assert a Labor Code PAGA claim to recover civil penalties based on the alleged Labor Code violations. (*See* FAC ¶¶ 14-41.)[2]

Plaintiffs allege that "[t]he filing of the *Duran* class action complaint on December 26, 2001 … tolled the statute of limitations for the Plaintiffs from four years from the filing of the *Duran* class action complaint, December 26, 1997, to the present." (*Id.*) Defendant acknowledges that Plaintiffs' second claim for relief is timely. However, it moves to dismiss on the basis that the statutes of limitations on the remainder of the claims have run.

## ANALYSIS

### A. Applicable Legal Standard.

Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss is proper under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

---

[2] On July 13, 2016, Defendant removed the action to this Court and asserted that the Court has jurisdiction because it is a "mass action," as that term is defined under the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1332(d). (Dkt. No. 1, Notice of Removal, ¶ 9.) Plaintiffs have not moved to remand. The Court also is satisfied that it has jurisdiction under CAFA.

1 and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v.*
2 *Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
3 Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must
4 allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim
5 has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the
6 reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,
7 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Where, as here, a defendant moves
8 to dismiss "based on the running of the statute of limitations," a court can grant the motion "only
9 if the assertions of the complaint, read with the required liberality, would not permit the plaintiff
10 to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.
11 1980). "The untimeliness must appear beyond doubt on the face of the complaint before a claim
12 will be dismissed as time-barred." *Centaur Classic Convertible Arbitrage Fund Ltd. v.*
13 *Countrywide Financial Corp.*, 878 F. Supp. 2d 1009, 1014 (C.D. Cal. 2011) (citing *Supermail*
14 *Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995)).

15 As a general rule, "a district court may not consider material beyond the pleadings in ruling
16 on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on*
17 *other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation
18 omitted). However, documents subject to judicial notice may be considered on a motion to
19 dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary
20 judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled*
21 *on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

22 If the allegations are insufficient to state a claim, a court should grant leave to amend,
23 unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th
24 Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th
25 Cir. 1990).

26 **B.     Requests for Judicial Notice.**
27 Defendant asks the Court to take judicial notice of Plaintiffs' complaints in this action,
28 their opposition to the motion to relate this case to *Trahan*, and an order in *Trahan*. (Def. RJN,

6

Exs. 1-2, 17-18.)  Both parties ask the Court to take judicial notice of various records from *Duran*. (*Id.*, Exs. 3-16; Dkt. No. 21-1, Pls. RJN, Exs. 1-3.)

The Court can take judicial notice of the existence of public records or court documents, but it may not take judicial notice of disputed facts in those documents.  *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Management Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201.  Accordingly, the Court GRANTS, IN PART, the parties' requests for judicial notice.  The Court grants the request to take judicial notice of the existence of Defendant's Exhibits 1-16 and Plaintiffs' Exhibits 1-3, but it does not take judicial notice of disputed facts in those documents.  The Court did not rely on the materials filed in the *Trahan* case to resolve the motion.  Therefore, Defendant's request to take judicial notice of Exhibits 17 and 18 is denied as moot.

**C.     The Court Grants Defendant's Motion.**

Defendant moves to dismiss Plaintiffs first and third through seventh claims for relief on the basis that they are barred by the applicable statutes of limitations and on the basis that tolling cannot save the claims.  Plaintiffs respond that the *Duran* litigation tolled the statutes of limitations under the doctrine announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and under the doctrine of equitable tolling.  In order to resolve this issue, the Court borrows the tolling rules of the forum state, *i.e.* California.  *See, e.g., Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993).

**1.     Tolling Based on the Filing and Pendency of *Duran*.**

Uunder federal law, "'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' … Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits[.]" *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (quoting *American Pipe and Construction Co. v. Utah*, 414 U.S. 535, 554 (1974)).

However, as set forth above, the Court must apply California's tolling rules.  *Cervantes*, 5

7

1  F.3d at 1275. The parties operate under the assumption that the *Duran* litigation tolled Plaintiffs

2  claims, at least for a time. Although the California Supreme Court has not expressly adopted the

3  *American Pipe* tolling doctrine, California courts have considered "class action" tolling. *See, e.g,*

4  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1118-19 (1988); *Falk v. Children's Hospital of Los*

5  *Angeles*, 237 Cal. App. 4th 1454, 1466 (2015); *San Francisco Unified School Dist. v. W.R. Grace*

6  *& Co.*, 37 Cal. App. 4th 1318, 1337 (1995).

7  In *Jolly*, the California Supreme Court declined to apply the *American Pipe* tolling

8  doctrine in the context of a mass-tort action. In reaching its conclusion, the California Supreme

9  Court evaluated whether application of the doctrine to the facts of that case would further the

10  policy considerations underlying the Supreme Court's rationale in *American Pipe*: (1) the

11  protection of the efficiency and economy of the class action device; and (2) "effectuation of the

12  purposes of the statute of limitations." *Jolly*, 44 Cal. 3d at 1121; *cf. Becker v. McMillin Constr.*

13  *Co., Inc.*, 226 Cal. App. 3d 1493, 1503 (1991) ("[T]he applicability of *American Pipe* can only be

14  determined by individualized attention to the identity of the claimants and the nature of the claims

15  involved, and by a careful weighing of the important policy considerations in this area."). In

16  addition, California courts have interpreted *Jolly* to require that the initial case put the defendant

17  on notice of the claims in the subsequent case. *See, e.g., Falk*, 237 Cal. App. 4th at 1466. "The

18  claims in the first action need not necessarily be identical to the ones in the subsequent action, but

19  they must be substantively similar, based on the same claims and subject matter and similar

20  evidence." *Id.*; *cf. American Pipe*, 414 U.S. at 561-62 (Blackmun, J., concurring and noting that

21  claims subject to tolling "will concern the same evidence, memories, and witnesses as the subject

22  matter of the original class suit").

23  Here, with the exception of the claim based on the failure to pay incentive compensation,

24  the parties do not dispute that the claims here are based on the same basic allegations that gave rise

25  to *Duran*: the allegations that Defendant had a uniform policy of misclassifying BBOs as non-

26  exempt employees and, as a result failed to properly compensate BBOs for overtime, failed to

27  provide BBOs with proper meal and rest breaks, and failed to provide accurate wage statements.

28  Thus, based on the facts alleged in the FAC, the allegations in the original and subsequent

1 complaints *Duran* would have placed Defendant on notice of many, but not all, the claims at issue
2 in this case.
3      The crux of the parties' dispute is whether certain events in the *Duran* litigation served to
4 terminate the tolling period and restart the statutes of limitations on the various claims.

     **a.**     **The first, fourth, fifth, and seventh claims for relief are time barred.**

6      Defendant argues that Plaintiffs' first, fourth, and fifth claims for relief are barred by the
7 statute of limitations, because tolling ended on November 30, 2006, after the *Duran* plaintiffs
8 dismissed these claims and filed the *Duran* TAC. Defendant argues that the PAGA claim is time
9 barred for the same reason. (Mot. at 13:9-15.) As noted, the *Duran* court provided the class with
10 additional notice and an additional period to opt-out of the litigation based on the dismissal of the
11 legal claims, which included the PAGA Labor Code claim.

12      In the *Falk* case, which also involved wage and hour violations, the court noted that denial
13 of class certification is not the only event that can be used determine when the tolling period ends.
14 Rather, it found that "the 'rationale of *American Pipe* does not permit a distinction among
15 situations in which the putative class representative gives up before, or after, the judge decides
16 whether the case may proceed on behalf of a class. Tolling lasts from the day a class claim is
17 asserted until the day the suit is conclusively not a class action[.]'" *Falk*, 237 Cal. App. 4th at
18 1464 (emphasis added and citing with approval *Sawyer v. Atlas Heating & Sheet Metal Works,*
19 *Inc.*, 642 F.3d 560, 562 (7th Cir. 2011)).

20      It is clear that the *Duran* case remained a class action after the plaintiffs dismissed their
21 legal claims. Plaintiffs contend that fact shows that the *Duran* case was "conclusively" a class
22 action as of November 30, 2006. The Court is not persuaded. Applying the California Supreme
23 Court's rationale in *Jolly*, the Court concludes that tolling the statute of limitations for these
24 claims, given the particular facts of this case, would neither protect the economies and efficiencies
25 of the class action device nor effectuate the purpose of the statute of limitations. *Crown, Cork &*
26 *Seal*, 462 U.S. at 352-53; *cf. Scott v. District of Columbia*, 87 F. Supp. 3d 291, 296 (D.D.C. 2015).
27      In the *Scott* case, the plaintiffs argued that *American Pipe* tolling applied based on a prior
28 lawsuit, in which the plaintiffs asserted both individual claims and class claims. The judge in the

9

1   earlier case dismissed the class claims, the plaintiff settled the individual claims, and then

2   judgment was entered. *Id.* at 293-94. The *Scott* plaintiffs argued that tolling on their claims,

3   which were "virtually indistinguishable" from the claims asserted in the earlier case, did not end

4   until judgment was entered in the earlier case. The court rejected their argument and held that

5   "dismissal of all class claims in a suit terminates tolling and causes the limitations period for each

6   absent class member to resume running." *Id.* at 296.

7   The *Scott* case is factually distinguishable from the facts of this case, in that some class

8   claims remained pending in *Duran* after the plaintiffs dismissed the legal claims. However, the

9   Court finds the *Scott* court's reasoning persuasive. That court reasoned that "[t]he efficiency of

10  the class action mechanism evaporates once the class claims are dismissed, and it becomes

11  necessary for the absent members to pursue their own individual interests," and that to permit

12  tolling while the litigation continued "would only serve to draw out litigation, effectively

13  extending the statute of limitations long past what the Supreme Court envisioned in *American*

14  *Pipe*." *Id.*

15  Here, the *Duran* plaintiffs dismissed the legal claims *after* the class had been certified.

16  Although the *Duran* court permitted the claims to be dismissed without prejudice, it required

17  further notice to the class. That notice specifically apprised class members, *i.e.* Plaintiffs here, that

18  "[i]f you do not want to participate in this lawsuit, or wish to pursue your legal claims instead of

19  having them dismissed, you can exclude yourself by 'opting out.'" (Order re Supplemental

20  Notice, Ex. A (Notice at 3).) Plaintiffs argue that this notice is not dispositive of the tolling issue.

21  The Court disagrees, and it finds the notice to the absent class members in *Duran* to be a material

22  fact on the issue of tolling.[3] That is because once the absent class members were notified that the

23  legal claims were to be dismissed, they were placed on notice that they could no longer "rely on

24  the named plaintiffs to press" those legal claims on their behalf. *Crown Cork & Seal*, 462 U.S.

25  352-53.

---

[3]   For this reason, the Court finds this case distinguishable from *Maine State Retirement System v. Countrywide Financial Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 WL 4389689 (C.D. Cal. May 5, 2011), on which Plaintiffs rely.

10

1    In addition, the Court finds that to toll the claims under these circumstances would not
2    effectuate all of the purposes of a statute of limitations. The *Duran* plaintiffs, in their own words,
3    made a "tactical decision" to waive the legal claims, and Plaintiffs here chose not to pursue those
4    claims by choosing not to opt-out of *Duran* at that point. To adopt Plaintiffs' position that *Duran*
5    continued to toll the legal claims would encourage, rather than "prevent plaintiffs from sleeping on
6    their rights." *Crown, Cork & Seal*, 462 U.S. at 352.

7    The statute of limitations for "a liability created by statute, other than a penalty or
8    forfeiture," is three years. *See, e.g,* Cal. Code Civ. P. 338(a); *Pineda v. Bank of America*, 50 Cal.
9    4th 1389, 1393 (2010); *Aubry v. Goldhor*, 201 Cal. App. 3d 399, 404 (1980). "An action upon a
10   statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the
11   state," is governed by a one-year statute of limitations, unless the statute provides for a different
12   limitation period. Cal. Code Civ. P. § 340(a). Assuming for the sake of argument that no time
13   had run before the *Duran* plaintiffs originally filed suit, and even if the Court applies a more
14   generous end date for tolling by allowing tolling to run until the opt-out period expired, the statute
15   of limitations on these claims began to run by no later than January 15, 2010 for the non-penalty
16   claims and by January 15, 2008, for the penalty based claims. Plaintiffs did not file the Complaint
17   in this case until May 24, 2016.

18   Accordingly, these claims are time barred.

### b.    The third claim for relief is time barred.

20   Defendant argues that Plaintiffs' third claim for relief, which asserts a UCL claim based
21   upon alleged rest and meal break violation, is barred by the statute of limitations, because tolling
22   ended on May 16, 2007, when the *Duran* court denied class certification on those claims.
23   Plaintiffs argue that the May 2007 order could not have been appealed until final judgment was
24   entered, because the order did not dispose of all class claims.

25   "The right to appeal in California is generally governed by the 'one final judgment' rule,
26   under which most interlocutory orders are not appealable." *In re Baycol Cases I and II*, 51 Cal.
27   4th 751, 754 (citing Cal. Code Civ. P. § 904.1)). However, in some instances the denial of class
28   claims constitutes the "death knell" of such claims, rendering an order immediately appealable. In

11

*In re Baycol*, the California Supreme Court held that the death knell "doctrine renders appealable only those orders that effectively terminate class claims but permit individual claims to continue." *Id.* Although the court in *Duran* denied the motion to certify the rest and meal break claims, and although those were apparently the only claims at issue in that motion, the Court is not persuaded by Defendant's argument that the statute of limitations began to run on May 16, 2007. In *In re Baycol*, the California Supreme Court stated that "orders that only limit … the number of claims available" to a class "are not similarly tantamount to dismissal." *Id.* at 757; *cf. Vasquez v. Superior Court*, 4 Cal. 3d 800, 805-06 & n.4 (1971) (concluding no right to appeal would lie where demurrer did not dispose of all claims, and left one of two class claim pending).

Defendant argues, in the alternative, that the statute of limitations expired on May 20, 2009, when the *Duran* court entered judgment and the *Duran* plaintiffs failed to file a cross-appeal. In their opposition brief, Plaintiffs argue that the order denying certification of the rest and meal break claims "remains appealable until such time as a final judgment is rendered in *Duran*." (Opp. Br. at 15:20-22.) The flaw in Plaintiffs' argument is that it ignores the fact that a judgment was entered in *Duran* in May 2009, albeit in the *Duran* plaintiffs' favor. If the order denying the motion to certify the rest and meal break claims could not have been appealed in May 2007, it became appealable once the *Duran* court entered final judgment in 2009 and Defendant appealed. The *Duran* plaintiffs chose not to appeal the decision to deny the rest and meal break claims.[4] Under California law, the order denying the motion to certify the rest and meal breaks became final and binding at that point, and the statute of limitations began to run. *Cf. Maughan v. Google Technology, Inc.,* 143 Cal. App. 4th 1242, 1247 (2006) ("If a judgment or order is appealable, an aggrieved party must file a timely appeal or forever lose the opportunity to obtain appellate review.") (emphasis and internal quotations and citations omitted); *Stephen v. Enterprise Rent-a-Car*, 235 Cal. App. 3d 806, 810 (1991) (failure to appeal "death knell" order denying class certification became final after plaintiff failed to appeal the order).

The statute of limitations for this claim is four years. Cal. Bus. & Prof. Code § 17208.

---

[4] The Court also notes that the order denying the renewed motion for class certification speaks only to issues of overtime. (*See generally* Def. RJN. Ex. 16.)

12

Even if no time had run before the *Duran* plaintiffs filed suit, Plaintiffs' third claim for relief is time barred.

### c. The sixth claim for relief is time barred.

In their sixth claim for relief, Plaintiffs allege "Defendant's incentive plan provides that incentive wages are paid on a quarterly basis. … Defendant's incentive plan pays the incentive wages in arrears; it pays the incentive wages sixty days after the end of the quarter following when the incentive wages were earned. Therefore, incentive wages are not paid during the period in which they are earned." (FAC ¶ 32.) Plaintiffs allege this constitutes a violation of the UCL, because "Defendant did not pay the incentive pay on a semi-monthly basis during the mandated time periods and did not pay the incentive wages during the period in which they are earned," in violation of Labor Code section 204. (*Id*. ¶ 35.) Defendant argues that this claim was never asserted in *Duran* and was never tolled.[5] Plaintiffs argue that this claim is part of the UCL claim asserted in *Duran*, and they note that the *Duran* SAC specifically referenced Labor Code section 204 as a predicate violation of the UCL claim. (*See, e.g., Duran* SAC ¶ 24.)

In order to find class action tolling under California law, the claims in the initial case need not be identical. However, they must be substantively similar so that the initial case puts the defendant on notice of the claims in the subsequent case. *Jolly*, 44 Cal. 3d at 1125; *Falk*, 237 Cal. App. 4th at 1466. The *Duran* plaintiffs did cite to Labor Code section 204 in the *Duran* SAC as a predicate violation of the UCL claim, and the claims in *Duran* are based on the theory that Defendant misclassified the BBO position. However, none of the complaints in the *Duran* litigation make any reference to a failure to pay incentive compensation. Rather, the allegations focus primarily on the failure to pay overtime, the failure to provide the requisite meal and rest breaks, and the concomitant failure to provide accurate wage statements. (*See generally* Def. RJN,

---

[5] Defendant also moves to dismiss on the basis that Labor Code section 204 does not provide a private right of action. Plaintiffs clarify that they are not asserting a claim for a direct violation of Labor Code section 204 and reference the statute only as a basis to assert a claim for unlawful conduct under the UCL. (Opp. Br. at 13:12-13.) The Court denies, in part and as moot, Defendant's motion to dismiss to the extent it rests on that argument.

13

Exs. 3-5, 9.)

The Court concludes that the *Duran* litigation did not provide Defendant with adequate notice of this claim. *Cf. Jolly*, 44 Cal. 3d at 1123-25 (concluding the prior action which did not assert personal injury claims on behalf of a class would not have put defendant on notice of such claims for purposes of subsequent action, which did assert personal injury claims on behalf of a putative class). Accordingly, class action tolling does not apply.

### 2. Equitable Tolling Does Not Apply.

"Equitable tolling under California law is a judicially created doctrine that suspends or extends statutes of limitations in order to ensure that limitations periods are not used to bar claims unfairly." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1015, 1022 (N.D. Cal. 2014) (citing *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009)). Under California law, courts apply a "definitive three-pronged test for invocation of the doctrine" of equitable tolling. *Loehr v. Ventura County Community College Dist.*, 147 Cal. App. 3d 1071, 1085 (1983). Under this test, "[a] plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice of the defendants in filing the first claim; 2) lack of prejudice to the defendant in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Cervantes*, 5 F.3d at 1275; *Loehr*, 147 Cal. App. 3d at 1085.

California courts have stated that "[u]nder equitable tolling, the statute of limitations is tolled in one forum as a claim is being pursued in another forum." *Martell v. Antelope Valley Hosp. Med. Center*, 67 Cal. App. 4th 978, 985 (1998) (citations omitted). However, where the same plaintiffs "pursue[] successive claims in the same forum," equitable tolling will not apply. *Id.*[6] California law also recognizes that equitable tolling may be permitted in certain situations, "such as after an erroneous dismissal or in the absence of a forum for resolution of the claim due

---

[6] In the *In re Cathode Ray Tube* case, the court stated that it was "not convinced by Defendants' argument that equitable estoppel does not apply when plaintiffs file a subsequent action in the same court as the prior action." 27 F. Supp. 3d at 1023. However, the court also noted that the cases cited by the defendants involved "named plaintiffs, or putative class members after the denial of class certification." *Id.* In this case, Plaintiffs were members of the *Duran* class.

14

to forces outside of the plaintiff's control."  *Baldhosky v. Sanchez*, -- Fed. Appx. --, 2016 WL 4137660 (9th Cir. Aug. 4, 2016) (citing *Bollinger v. Nat'l Fire Ins. Co. of Hartford, Conn.*, 154 P.2d 399, 405-06 (Cal. 1944)).  Based on the face of the complaint, neither of these situations would apply.

Accordingly, the Court concludes that based on the facts alleged, California's equitable tolling doctrine does not apply in this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss.  The Court recognizes that, in general, leave to amend should be freely granted.  However, the Court concludes that, on the facts of this case, amendment of these claims would be futile.

The parties shall appear as scheduled on October 7, 2016, for the initial case management conference, and the parties' joint case management conference statement is due on September 30, 2016.

**IT IS SO ORDERED.**

Dated:  September 19, 2016

_____
JEFFREY S. WHITE
United States District Judge

15